IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. <u>3:12-cv-838</u>

| | |
|---|---|
| TEMAKO McCARTHY & VICTOR WILLIAMS,<br>    Co-Administrators of the Estate of<br>    La-Reko Williams,<br><br>        Plaintiffs,<br><br>v.<br><br>TASER INTERNATIONAL, INC.,<br><br>CITY OF CHARLOTTE,<br><br>OFFICER MICHAEL FORBES,<br>    in his individual and official capacity, &<br><br>CHIEF RODNEY MONROE,<br>    in his individual and official capacity as<br>    Chief of Charlotte-Mecklenburg Police<br>    Department,<br><br>        Defendants. | **COMPLAINT**<br>**(JURY TRIAL DEMANDED)** |

Come now Plaintiffs and state their claim for wrongful death:

### Parties

1. Plaintiffs Temako McCarthy and Victor Williams are the Co-Administrators of the Estate of La-Reko Williams which is properly filed in the Superior Court of Mecklenburg County, North Carolina.

2. Temako McCarthy and Victor Williams are the natural parents of La-Reko Williams, the decedent.

1

3.    Decedent La-Reko-Williams, was, at the time of his death and at all times relevant herein, a 21 y car old citizen and resident of Charlotte, Mecklenburg County, North Carolina.

4.    Defendant Officer Michael Forbes is or was as of July 20, 2011 a police officer employed by the Charlotte-Mecklenburg Police Department.

5.    Defendant City of Charlotte is a properly organized municipality in the State of North Carolina.

6.    Rodney Monroe (hereinafter referred to as "Chief Monroe") is and was at all relevant times the Chief of the Charlotte-Mecklenburg Police Department, and the ultimate supervisor of Officer Forbes.

7.    Defendant TASER International, Inc. is a Delaware Corporation with its principal place of business in the State of Arizona.  TASER International does business in the State of North Carolina.

8.    Based on information and belief, the City of Charlotte has secured liability insurance, applicable to liability from any negligence, tort, or any cause of action as alleged in this Complaint by employees acting within the scope of their employment, and therefore waives municipal immunity.

**Jurisdiction**

9.    Plaintiffs bring this action, in part, pursuant to 42 U.S.C. §1983 and §1988 and the Fourth and Fourteenth Amendments to the United States Constitution.

10.   The court has jurisdiction pursuant to 28 U.S.C. §1343(3) (civil rights), and 28 U.S.C. §1331 (federal question).

2

11. Plaintiffs pray the court to invoke its supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

## Venue

12. The events complained of occurred in the Western District of North Carolina, in the Charlotte Division.

## Facts

13. At all relevant times the Defendant Police Officer Forbes was in uniform and acting within the scope of his employment and under color of state law. Particularly, at all relevant times Defendant Police Officer Forbes acted under color of the laws, statutes, ordinances, regulations, policies, customs and usages of the City of Charlotte, a municipal entity in the State of North Carolina.

14. At all relevant times Defendant Forbes and Monroe acted under color of state law.

15. Plaintiffs demand jury trial.

16. On July 20, 2011, La-Reko Williams, a 21 year old black male, was riding the Lynx light rail train in Charlotte, Mecklenburg County, North Carolina.

17. La-Reko Williams was accompanied by his girlfriend Destiny Franklin.

18. Kahlilah Brown, a friend of La-Reko, was also traveling on the Lynx light rail train. Kahlilah saw La-Reko and spoke to him briefly while they traveled on the train.

19. At the Woodlawn transit stop, all three, La-Reko, Destiny and Kahlilah exited the train.

20. As the three were exiting the rail platform, Kahlilah asked La-Reko to use his cigarette lighter. Destiny responded that La-Reko did not have a cigarette lighter. Kahlilah re-asked her question to La-Reko.

21. Destiny became upset and first struck La-Reko three times in the head.

3

22. La-Reko advised Destiny not to put her hands on him and tried to calm Destiny's physical attack on him.

23. The physical altercation between Destiny and La-Reko escalated and the police were called.

24. Based on information and belief, Officer Forbes was one of the officers that responded to the altercation between decedent and Destiny.

25. Officer Forbes was given and trained by the Charlotte Mecklenburg Police Department to use an ECD "Electronic Control Device" manufactured by TASER International.

26. Based on information and belief, Officer Forbes deployed the TASER against La-Reko Williams in an unlawful manner inconsistent with TASER International's training.

27. Based on information and belief, Officer Forbes struck and shocked La-Reko Williams twice with his TASER.

28. Based on information and belief, Officer Forbes deployed the TASER against La-Reko Williams in a method which violated Mr. Williams' Constitutional rights.

29. Based on information and belief, Officer Forbes deployed the TASER against La-Reko Williams when Williams did not present an imminent physical threat to the officer or the public.

30. When struck by the TASER, La-Reko Williams, who was approximately 5 feet, 6 inches tall and weighed approximately 145 pounds, was unarmed and presented no threat to the officer.

31. Based on information and belief, prior to using force against La-Reko Williams, Officer Forbes did not employ any intermediate method of force before implementing the use of a deadly weapon, his TASER.

4

32. Officer Forbes targeted his TASER weapon and stuck Williams with the TASER in the chest in close proximity of the heart increasing the likelihood of cardiac capture, cardiac arrest and death.

33. Williams was struck with the TASER in the chest and at the age of 21 suffered a cardiac arrest and died within minutes.

34. The cardiac arrest and death of Williams was directly caused by the use of the TASER.

35. As a direct and proximate result of the wrongful conduct of Defendants, Decedent La-Reko Williams sustained fatal injuries resulting in his death.

36. Based on information and belief, the deployment of the TASER and police interaction with Williams were captured on video cameras in the patrol vehicle and/or cameras maintained by the Charlotte Area Transit system.

37. Videos related to this incident are within the custody and control of Defendant, City of Charlotte.

38. Prior to the unnecessary death of Williams, Charlotte-Mecklenburg Police had policies, customs, usages, procedures and training that allowed and promoted the excessive and/or improper use of deadly force, to wit: use of TASER's[1] against suspects.

39. Prior to the unnecessary death of Williams, Defendants TASER International, Chief Monroe and the City of Charlotte had specific knowledge that cardiac capture, cardiac arrest and risk of death was associated with and foreseeable when the TASER weapon is deployed and makes contact with the victim's chest and probes release electric current in close proximity to the victim's heart.

---

[1] TASER is an acronym for *Thomas A. Swift's Electric Rifle.* In the Complaint, the term "TASER's" may be used depending on context to describe the plural of a TASER, an Electronic Control Device used by the police.

40. A number of scientific studies, known to Defendants, have documented the increased risk to subjects based in the placement of TASER probes near the heart of subjects.

41. In response to these studies in September 30, 2009, TASER International modified its training to warn users of its product to not target a TASER toward a subject's chest.

42. Based on information and belief, the City of Charlotte was aware that officers should be trained not to target the chest of victims with TASER's and to modify their usage of TASER's to minimize the use of this form of deadly force.

43. The City of Charlotte maliciously, wantonly and negligently failed to properly train its officers on the use of TASER's.

44. Prior to the death of La-Reko Williams, on March 20, 2008 Officer Dawson of the Charlotte-Mecklenburg Police Department used a TASER against Darryl Turner, a seventeen year old black male, causing Mr. Turner's death.

45. At the time that Officer Dawson used the TASER against Darryl Turner, Turner who weighed approximately 170 pounds, was unarmed and presented no immediate threat to the officer or the public.

46. Officer Dawson struck and shocked Darryl Turner twice with his TASER.

47. Prior to using force against Darryl Turner, Officer Dawson did not employ any intermediate method of force before implementing the use of a deadly weapon, his TASER.

48. On July 19, 2012, one day before the death of Williams, a jury in a wrongful death lawsuit of the Estate of Darryl Turner concluded that the use of the TASER by the Charlotte-Mecklenburg Police Department caused the wrongful death of Darryl Turner.

6

49. Despite the medical and scientific evidence, the prior death of Darryl Turner, and the judicial determination of the wrongful death of Darryl Turner, City of Charlotte police officers continued to use deadly force, to wit: TASER's in a dangerous and reckless manner in deliberate disregard for the safety and rights of the public and the decedent, La-Reko Williams.

50. Defendant TASER International manufactured the Model X-26 electrical control devices (ECDs) which the individual defendant used to shock Williams.

**COUNT I**
**Excessive Force**
**Federal Claim – 1983 – Fourth Amendment**
**Against City of Charlotte; Petition for Injunctive Relief**

51. Plaintiffs incorporate all prior paragraphs.

52. The TASER's used by Defendant Officer Forbes, Officer Dawson and other officers of the Charlotte-Mecklenburg Police Department are deadly weapons that cause cardiac arrest and death.

53. The use of deadly weapons by Charlotte-Mecklenburg Police Department police officers on members of the public should not be excessive and should be limited to instances in which there is an immediate threat to the officer or public.

54. When using force against members of the public, Charlotte-Mecklenburg Police Department officers are only allowed to use reasonable force based upon the circumstances and facts of each occurrence.

55. Policies, usages and customs of the Charlotte-Mecklenburg Police Department have ratified, allowed or encouraged the usage of deadly weapons, to wit: TASER's, by its

7

officers in circumstances where deadly force was unjustified and less deadly uses of force should have been implemented.

56. On March 20, 2008, Officer Dawson of the Charlotte-Mecklenburg Police Department used a TASER against Darryl Turner, an unarmed seventeen year old black male, causing Mr. Turner's death.

57. Officer Dawson testified that he customarily brandished a deadly weapon, his TASER, in order to compel compliance with officer's commands and admitted brandishing his TASER prior to encountering Darryl Turner.

58. Officer Dawson further testified that he was specifically trained by the Charlotte-Mecklenburg Police Department to use a deadly weapon, a TASER, before considering a less deadly use of force, to wit: hands-on force.

59. Pursuant to his training from Defendant City of Charlotte, Officer Dawson specifically failed to consider the use of reasonable force, to wit: hands-on force and excessively escalated the use of deadly force, to wit: a TASER.

60. Without even issuing a verbal order or command that Darryl Turner was under arrest, Officer Dawson used deadly force through the use of a TASER to effectuate the arrest and unlawful seizure of Darryl Turner.

61. Despite the fact that Officer Dawson's use of a TASER caused the death of Darryl Turner and that alternative reasonable use of force, to wit: verbal commands, hands-on force or intermediate weapons, was not used, Defendant City of Charlotte did not determine that Officer Dawson's initial usage of the TASER was inappropriate.

8

62. Based on information and belief, after Darryl Turner's death caused by the use of a TASER by the Charlotte-Mecklenburg Police Department, Defendant City of Charlotte failed to train its officers on the appropriate use of TASER's.

63. Defendant Officer Forbes based on the training, polices and customs of the City of Charlotte likewise used a deadly weapon, to wit: his TASER in an inappropriate and excessive manner before considering a less deadly uses of force against La-Reko Williams.

64. Defendant Officer Forbes by using deadly and excessive force deprived Williams of his Constitutional Fourth Amendment right to be free from unlawful and unreasonable seizures.

65. Charlotte-Mecklenburg Police Department officers continue to use TASER's in an unlawful, unreasonable, and excessive manner to deprive members of the public of their Constitutional right to be free from the threat of deadly force and unreasonable seizures.

66. Plaintiff petitions the Court to permanently enjoin the Charlotte-Mecklenburg Police Department from its continued usage of TASER's by its officers or alternatively the Court temporarily enjoin officers of the Charlotte-Mecklenburg Police Department from using TASER's without a material alteration in the procedures, policies and customs of the Defendant Charlotte-Mecklenburg Police Department limiting the use of TASER's to only circumstances requiring the use of deadly force by a police officer.

### COUNT II
### Excessive Force
### Federal Claim – 1983 – Fourth Amendment
### Against Individual Defendant Officer Forbes

67. Plaintiffs incorporate all prior paragraphs.

9

68. Defendant Officer Forbes deprived Williams of the rights, privileges, and immunities secured by the Constitution and laws of the United States by subjecting him to excessive force under the Fourth Amendment.

69. Particularly, Defendant Officer Forbes shocking of Williams was unreasonable under the circumstances.

70. Defendant Officer Forbes, because of his personal training, knew or should have known that each application of a TASER shock to Williams would cause the infliction of great pain.

71. Defendant Officer Forbes and other Defendants knew or should have known that the application of a TASER shock to Williams' chest and in close proximity to his heart would increase the likelihood of a fatality.

72. Defendant Officer Forbes' use of force was also unreasonable under the circumstances.

73. As a direct and proximate result of this use of excessive force, Williams suffered serious personal injuries and death.

<u>COUNT III</u>
<u>Public Entity Liability</u>
<u>Federal Claim – 1983</u>
<u>Against City of Charlotte</u>

74. Plaintiffs incorporate all prior paragraphs.

75. Based on information and belief, the City of Charlotte and its decision makers, with deliberate indifference, gross negligence, and reckless disregard to the safety, security, and constitutional and statutory rights of Williams, the public and the Plaintiffs, as well as others similarly situated, maintained, enforced, tolerated, permitted, acquiesced in, and applied the following policies, practices, or customs and usages:

10

a. Failure to implement protocols and train officers in the proper way to contain, treat and secure irrational persons such as Williams who presented no threat to the officers or the public at the time of engagement,

b. Failure to adequately train, supervise, and control employees in the dangers of the usage of TASER ECD shocks,

c. Failure to adequately train, supervise, and control employees in the necessity of avoiding the targeting of TASER's towards a subject's chest and heart,

76. As a direct and proximate result of this conduct by City of Charlotte, Williams sustained suffered personal injuries and death.

**COUNT IV**
**Products Liability**
**State Law Claim**
**Against Defendant TASER INTERNATIONAL, INC**

77. Plaintiffs incorporate all prior paragraphs.

78. In the ordinary course of its business, Defendant TASER International, Inc. designed, manufactured, sold, distributed, fabricated, assembled, bought, inspected, tested, serviced, marketed, warranted, and advertised the subject TASER ECD weapon to the Charlotte-Mecklenburg Police Department.

79. The TASER ECD weapon contained design and/or manufacturing defects when put to a reasonably anticipated use, particularly in that when officers would fire their TASER's at a subject's chest or in close proximity to the subject's chest, the subject could die.

80. The product was and is unreasonably dangerous and defective for use on human beings because, among other reasons, it fails to meet consumer expectations because it can trigger cardiac arrest and death with direct electrical shocks to the chest.

11

81. In this case, the officer used the TASER ECD weapon in a reasonably anticipated use, particularly, in that Officer Forbes used his TASER in the course of arresting Williams and shocked him causing his death.

82. As a direct and proximate result of the above-described defects in the TASER ECD ordinance, Williams sustained suffered personal injuries and death.

**COUNT V**
**Product Liability - Failure to Warn**
**State Law Claim**
**Against Defendant TASER INTERNATIONAL, INC.**

83. Plaintiffs incorporate all prior paragraphs.

84. Because of formal experimentation and because of actual incidents around the world, Defendant TASER International, Inc.:

    a.    Knew that the design, manufacture, assembly, marketing and distribution of the Model X-26 was defective and dangerous;

    b.    Knew that because of the defects, the weapon could not be used safely for the purpose for which it was intended; and

    c.    Knew that the individual Defendant would use the product as it was used here.

85. With that knowledge, in conscious disregard of the safety of the public, Defendant TASER International, Inc. placed this product on the market without warning customers or the unknowing public of the defects and dangers.

86. Defendant TASER International, Inc. sold the TASER weapon to the Charlotte-Mecklenburg Police Department without warnings as to the effect of darts to the front of the upper chest, which include cardiac arrest and death while also alleging that TASER shocks do not affect the cardiac rhythms of the heart.

12

87. Defendant TASER International, Inc. knew when it did so that this weapon would be sold and used without knowledge of the defects and dangers.

88. Defendant TASER International, Inc. by placing the defective and dangerous weapon on the market, expressly and impliedly represented that it was safe for the purpose for which it was intended.

89. Defendant TASER International, Inc. sold the weapon to local law enforcement agencies including City of Charlotte without adequate warning of or training in its potential for causing death and great bodily injury, especially when shocks are administered to the front chest.

90. The other defendants herein, in purchasing and using the defective weapon as herein alleged, relied on each of Defendant TASER International, Inc.'s representations and misrepresentations.

91. As a direct and proximate result of the above-described defects in the TASER weapon, and the failure to warn, Williams sustained serious personal injuries and death, and the Plaintiffs suffered the damages outlined herein.

### COUNT VI
### Products Liability – Negligence – Defective Product
### State Law Claim
### Against Defendant TASER INTERNATIONAL, INC.

92. Plaintiffs incorporate all prior paragraphs.

93. Defendant TASER International, Inc. failed to use ordinary care to manufacture or design the product to be reasonably safe.

94. As a direct and proximate result of the above-described defects in the TASER weapon, Williams sustained suffered personal injuries and death.

13

**COUNT VII**
**Products Liability – Intentional or Negligent Concealment/Fraud**
**State Law Claim**
**Against Defendant TASER INTERNATIONAL, INC.**

95.     Plaintiffs incorporate all prior paragraphs.

96.     Based upon information and belief, the individual defendants were trained in the use of the TASER Model X26 ECD by compact disc media, oral and written instruction, training, warnings, and other methods provided directly or indirectly to the defendant officers and Charlotte-Mecklenburg Police Department by Defendant TASER International.

97.     Plaintiffs are informed and believe that prior to the date of Williams' death, Defendant TASER International, Inc., misrepresented, failed to disclose and/or failed to warn officers of the following material facts, among others:

    a.    Falsely represented that its ECDs cannot directly cause cardiac arrest;

    b.    Falsely represented that its 26-watt ECDs cannot cause cardiac arrest indirectly through catecholamine release and acidosis;

    c.    Falsely represented that multiple ECD discharges into a human being presents no greater health risk than a single discharge;

    d.    Falsely represented that a TASER 26-watt ECD affects the sensory and motor nervous systems, but cannot affect the cardiac system of a suspect; and

    e.    Failed to disclose and/or warn that a TASER ECD is a potentially lethal device which can cause cardiac arrest.

98.     Defendant TASER International, Inc. intentionally represented or negligently misrepresented to the City of Charlotte and Officer Forbes of the material statements set

14

forth herein above, including those set forth in the preceding paragraph, and many more of a similar nature.

99. These representations were in fact false.

100. Defendant TASER International, Inc. knew or should have known that the misrepresentations were false when it made them, and/or made the representations recklessly and without regard for their truth, or negligence.

101. Defendant TASER International, Inc. intende d that law enforcement agencies, when purchasing its products and that individual officers such as Defendant Officer Forbes would rely on the misrepresentations when using its products.

102. The Charlotte-Mecklenburg Police Department did, in fact, rely on these misrepresentations in purchasing, deploying, training, instructing, and otherwise using TASER International, Inc. manufactured ECD's in interacting with members of the public such as Williams.

103. Based on information and belief, Defendant TASER International, Inc. intentionally or negligently failed to disclose to Defendants and other law enforcement agencies material and important facts that were known only to Defendant TASER International, Inc. and could not have been discovered by law enforcement agencies, all as described hereinabove. These important and material facts include, but are not limited to: that its ECDs can be in fact "lethal", that its ECDs can and do on occasion cause cardiac arrest and death, and that the risk of cardiac arrest is significantly decreased if electrical discharges from the ECD are not targeted towards the subject's chest.

104. Defendant TASER International, Inc. actively concealed these important material facts from law enforcement agencies, and/or prevented such agencies from discovering these

15

facts. Instead, Defendant TASER International disclosed partial truths about its ECD's but intentionally or negligently failed to disclose the important and material facts set forth above.

105. At all times herein mentioned, the Defendants were reliant upon Defendant TASER International, Inc. for appropriate warnings, instructions, and for the necessary medical and scientific evidence so that officers could be properly trained and instructed in the use of the ECDs.

106. The Charlotte-Mecklenburg Police Department, its officers, and other law enforcement agencies and their officers did not know of the facts concealed by Defendant TASER International.

107. Defendant TASER Inte rnational, Inc. intended to deceive the Charlotte-Mecklenburg Police Department, other law enforcement agencies, and the general public, of the true facts in order to promote and sell its ECDs with artificial and inflated safety claims, and to make profits.

108. The Charlotte-Mecklenburg Police Department and other law enforcement agencies reasonably relied on Defendant TASER International's deceptions.

109. As a legal result of Defendant TASER International, Inc.'s misrepresentations and concealment, Williams and the Plaintiffs suffered economic and non-economic damages, including personal injuries and death.

## **Damages**

110. As the direct and proximate result of the wrongful conduct of Defendants, the Plaintiff's estate incurred funeral expenses. The Plaintiffs have lost the companionship, assistance,

16

society, comfort, kindly offices, advice, protection, care, guidance and expected income and support of their son La-Reko Williams.

111.    During the events described above, and before his death, Decedent endured excruciatingly painful, paralyzing electricity, humiliation, indignity, disgrace, stress, mortification and fear, all in amounts in accordance with proof.

112.    Decedent suffered death, and as he died, the knowledge that he was losing his life.

113.    As the direct and proximate result of the wrongful conduct of Defendants, Plaintiffs allege that they are entitled to recover compensatory damages, punitive damages and all other damages allowed by North Carolina General Statute § 28A-18-2(b) in an amount in excess of $10,000.

### Punitive Damages –
### Applicable to All Counts, Federal and State
### Except Counts Against City of Charlotte

114.    The conduct of the Defendant Officer Forbes and of TASER International, Inc. was malicious or recklessly indifferent to the rights of Plaintiffs' decedent.

115.    Officer Forbes targeted and shocked Williams in the chest in close proximity to his heart although Williams presented no threat to him or to the public.

116.    Chief Monroe acted maliciously, recklessly and with deliberate indifference to the safety of the public in authorizing Charlotte-Mecklenburg police officers to continue to use TASER's on the public after the medical examiner and a jury in federal court determined that the death of Darryl Turner was caused by the use of a TASER on an unarmed man.

117.    Defendant TASER International, Inc. failed to warn law enforcement officers of the product defects because they did not want to inhibit sales of the product, and thereby reduce the profitability of their business enterprise.

17

118. Based on information and belief, Defendant TASER International acted in a despicable, malicious and oppressive manner, in conscious disregard of, and with reckless indifference to the rights of Williams and other people whom they knew, or reasonably should have known, were likely to be shocked with the TASER weapon by law enforcement officers not adequately warned or trained about the extreme and unreasonable danger of this product, and that the weapons posed an unreasonable risk of serious bodily injury or death.

119. Defendant TASER International engaged in such conduct before this incident, and has engaged in the conduct since this incident.

120. Plaintiffs are entitled to an award of punitive damages against Defendant Officer Forbes, and against TASER International, Inc. in order to punish them and to deter others.

121. Under 42 U.S.C. §1988 if Plaintiffs are the prevailing parties in their federal claims under 42 U.S.C. 1983, then they will be entitled to receive from Defendants reasonable attorney's fees, non-taxable expenses, and costs.

## Prayer

WHEREFORE, the Plaintiffs pray judgment against the Defendants, jointly and severely, as follows:

A. That they have and recover of all Defendants an amount in excess of $10,000.00 for compensatory damages and wrongful death damages pursuant to North Carolina General Statute §28A-18-2;

B. That they recover punitive damages up to the legal maximum allowed by law against TASER International, Inc.;

C. That all issues of fact be tried by a jury;

18

D.    That all costs of this action be taxed against Defendants, including a reasonable fee for the Plaintiff's attorney;

E.    For interest on any compensatory from the date of the institution of this action as provided by N.C.G.S. Sections 24-1 and 24-5; and

F.    For such other and further relief as the Court may deem just and proper.

Respectfully submitted this 18th day of December, 2012.

*s/Charles Ali Everage*
Charles Ali Everage, NC State Bar # 28267
*Attorney for Plaintiff*
EVERAGE LAW FIRM, PLLC
1800 Camden Road, Suite 104
Charlotte, North Carolina 28203
Telephone: (704) 377-9157
Facsimile: (704) 377-9160
E-mail: cae@everagelaw.com

19

## CERTIFICATE OF SERVICE

I, Charles Ali Everage, hereby certify that I have this day electronically filed a copy of the foregoing **PLAINTIFF'S COMPLAINT** with the Clerk of Court using the CM/ECF system. A copy of the Complaint will be sent to the following person(s) through the United States Postal Service:

TASER INTERNATIONAL, INC.
c/o Registered Agent, CT Corporation System
150 Fayetteville Street, Box 1011
Raleigh, North Carolina 27601

CITY OF CHARLOTTE
c/o Mayor Anthony Foxx
600 East Fourth Street, 15th Floor
Charlotte, North Carolina 28202

OFFICER MICHAEL FORBES
c/o Charlotte-Mecklenburg Police Department, Westover Division
1540 West Blvd.
Charlotte, North Carolina 28208

CHIEF RODNEY MONROE
c/o Charlotte-Mecklenburg Government Center
600 E. Fourth Street
Charlotte, North Carolina 28208

This the 18th day of December, 2012.

*s/Charles Ali Everage*
Charles Ali Everage, NC State Bar # 28267
*Attorney for Plaintiff*
EVERAGE LAW FIRM, PLLC
1800 Camden Road, Suite 104
Charlotte, North Carolina 28203
Telephone: (704) 377-9157
Facsimile: (704) 377-9160
E-mail: cae@everagelaw.com

20

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:12-cv-838

| | |
|---|---|
| TEMAKO McCARTHY & VICTOR WILLIAMS, <br>     Co-Administrators of the Estate of <br>     La-Reko Williams, <br><br>               Plaintiffs, <br><br> v. <br><br> TASER INTERNATIONAL, INC., <br><br> CITY OF CHARLOTTE, <br><br> OFFICER MICHAEL FORBES, <br>     in his individual and official capacity, & <br><br> CHIEF RODNEY MONROE, <br>     in his individual and official capacity as <br>     Chief of Charlotte-Mecklenburg Police <br>     Department, <br><br>               Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )   **VERIFICATION TO COMPLAINT** <br>     **(JURY TRIAL DEMANDED)** |

**TEMAKO McCARTHY**, being duly sworn, deposes and says that the allegations set forth in Complaint are true to the best of her knowledge and belief, except for the allegations set forth upon information and belief, and as to those allegations, she believes them to be true.

This the 10th day of December, 2012.

                                   TEMAKO McCARTHY

STATE OF NORTH CAROLINA
COUNTY OF MECKLENBURG
Sworn to and subscribed before me
this the 10th day of December, 2012.

NOTARY PUBLIC
My Commission Expires: 10-10-2016

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:12-cv-838

| | |
|---|---|
| TEMAKO McCARTHY & VICTOR WILLIAMS,<br>    Co-Administrators of the Estate of<br>    La-Reko Williams,<br><br>        Plaintiffs,<br><br>v.<br><br>TASER INTERNATIONAL, INC.,<br><br>CITY OF CHARLOTTE,<br><br>OFFICER MICHAEL FORBES,<br>    in his individual and official capacity, &<br><br>CHIEF RODNEY MONROE,<br>    in his individual and official capacity as<br>    Chief of Charlotte-Mecklenburg Police<br>    Department,<br><br>        Defendants. | **VERIFICATION TO COMPLAINT**<br>**(JURY TRIAL DEMANDED)** |

**VICTOR WILLIAMS,** being duly sworn, deposes and says that the allegations set forth in Complaint are true to the best of her knowledge and belief, except for the allegations set forth upon information and belief, and as to those allegations, she believes them to be true.

This the 10th day of December, 2012.

_(signature)_
**VICTOR WILLIAMS**

STATE OF NORTH CAROLINA
COUNTY OF MECKLENBURG
Sworn to and subscribed before me
this the 10th day of December, 2012.
_(signature)_
NOTARY PUBLIC
My Commission Expires: 10-10-2016