# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:12-CV-00838-MOC-DSC

| | |
|---|---|
| TEMAKO MCCARTHY AND VICTOR WILLIAMS, co-administrators of the Estate of La-Reko Williams,<br><br>Plaintiffs,<br><br>v.<br><br>TASER INTERNATIONAL, INC., CITY OF CHARLOTTE, OFFICER MICHAEL FORBES, in his individual and official capacity, and CHIEF RODNEY MONROE, in his individual and official capacity as Chief of Charlotte-Mecklenburg Police Department,<br><br>Defendants. | **MEMORANDUM AND RECOMMENDATION** |

**THIS MATTER** is before the Court on "Defendants Rodney Monroe and The City of Charlotte's Motion for Judgment on the Pleadings and Motion to Dismiss for Lack of Jurisdiction," Doc. 22, filed May 28, 2013, and the parties' associated briefs and exhibits, Docs. 23, 26 and 27.

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and this Motion is now ripe for consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendants' Motion for Judgment on the Pleadings be granted and Defendants' Motion to Dismiss for Lack of Jurisdiction be granted, as discussed below.

# I. PROCEDURAL AND FACTUAL BACKGROUND

This is an action seeking damages pursuant to 42 U.S.C. § 1983 for violation of the decedent La-Reko Williams' rights under the United States Constitution as well as for state law claims. Plaintiffs Temako McCarthy and Victor Williams are the decedent's parents and co-administrators of his estate.

Accepting the allegations of the Complaint as true, on July 20, 2011, La-Reko Williams was traveling on the Lynx light rail train with his girlfriend Destiny Franklin. Doc. 1 at ¶¶16-17. Kahilah Brown, a female friend of Williams, was also a passenger on the train and spoke to him briefly. Id. at ¶18. At the Woodlawn station, all three exited the train. Id. at ¶19. As they were exiting the rail platform, Brown asked Williams to use his cigarette lighter. Id. at ¶20. Franklin became upset and struck Williams three times on his head. Id. at ¶21. Williams told Franklin not to strike him and attempted to calm her physical attack. Id. at ¶22. The altercation escalated and the police were called. Id. at ¶23.

Defendant Michael Forbes was a police officer employed by the Charlotte-Mecklenburg Police Department (the "CMPD") who responded to the scene. Id. at ¶¶4, 24. Officer Forbes was trained by the CMPD on the use an "Electronic Control Device" manufactured by TASER International ("TASER"). Id. at ¶25. When Officer Forbes encountered decedent at the scene, Williams was unarmed and did not present an imminent physical threat to the officer or the public. Id. at ¶¶29-30. Officer Forbes did not employ any intermediate method of force. Id. at ¶31. Officer Forbes deployed the TASER against Williams and shocked him twice in the chest. Id. at ¶¶27, 32. Targeting the TASER at Williams' chest in close proximity to his heart increased the likelihood of cardiac capture, cardiac arrest or death. Id. at ¶26. Using the device in this manner was also inconsistent with TASER International's training protocol. Id. at ¶¶26,

32. After being subjected to two shocks from Officer Forbes' TASER, Williams died of cardiac arrest. Id. at ¶¶ 27, 33.

Plaintiffs allege that Defendant City of Charlotte's policies and training on the use of TASERs allowed and promoted the improper use of deadly force. Id. at ¶38. Plaintiffs allege that Chief Monroe and the City had specific knowledge that cardiac capture, cardiac arrest and death were foreseeable when the TASER shocks individuals in close proximity to the heart and were also aware, based upon new training from TASER International, that officers should not target a person's chest. Id. at ¶¶39-42. Plaintiffs also allege that in a prior incident, a Charlotte Mecklenburg police officer used a TASER on another individual causing his death. One day before Williams' death here, a jury in this Court returned a verdict finding that the use of a TASER by the CMPD there caused the wrongful death of decedent Darryl Turner. Id. at ¶48.

On December 18, 2012, Plaintiffs initiated this action alleging seven claims for relief: a claim against the City under 42 U.S.C. § 1983 for excessive force and a petition for injunctive relief to enjoin the use of TASERs ; a claim against Officer Forbes under 42 U.S.C. § 1983 for excessive force; a claim under 42 U.S.C. § 1983 against the City for "deliberate indifference, gross negligence, and reckless disregard" including allegations that the City failed to train and supervise officers; and four state law product liability claims against TASER International, Inc. Id. at ¶¶51-109. None of the causes of action alleged in the Complaint contain any factual allegations against Chief Monroe.

On May 28, 2013, Defendants Monroe and the City filed their Motion for Judgment on the Pleadings and Motion to Dismiss. Doc. 22. They argue that any claims against Chief Monroe should be dismissed with prejudice because they amount to threadbare factual allegations and fail to assert any constitutional injury caused by his individual actions. They also

assert that Monroe is entitled to qualified immunity. They further argue that the Plaintiffs' claims against the City should be dismissed with prejudice because they amount to threadbare factual allegations and are insufficient to state a claim for failure to train and supervise. Finally, Defendants assert that the Court lacks subject matter jurisdiction to grant injunctive relief. In their Response, Doc. 26, Plaintiffs argue that they have asserted sufficient facts to support a civil rights claim for excessive force and failure to train in violation of 42 U.S.C. § 1983 against Chief Monroe and the City.

The Motion for Judgment on the Pleadings and to Dismiss for Lack of Jurisdiction has been fully briefed and is now ripe for review.

## II. DISCUSSION

### A. Motion for Judgment on the Pleadings

#### 1. Standard of Review

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). In resolving a motion for judgment on the pleadings, the court must accept all of the non-movant's factual averments as true and draw all reasonable inferences in its favor. Bradley v. Ramsey, 329 F. Supp.2d 617, 622 (W.D.N.C. 2004). Judgment on the pleadings is warranted where the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Id. The court may consider the complaint, answer, and any materials attached to those pleadings or motions for judgment on the pleadings "so long as they are integral to the complaint and authentic." Philips v. Pitt Cnty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir.2009); see also Fed.R.Civ.P. 10(c) (stating that "an exhibit to a pleading is part of the pleading for all purposes."). Unlike a Rule 12(b)(6) motion, the court may consider the answer as

well on a Rule 12(c) Motion. Alexander v. City of Greensboro, 801 F.Supp.2d 429, 433 (M.D.N.C.2011).

Although a motion for judgment on the pleadings pursuant to Rule 12(c) is separate and distinct from a motion to dismiss under Rule 12(b)(6), federal courts apply the same standard for Rule 12(c) motions as for motions made pursuant to Rule 12(b)(6). Independence News, Inc. v. City of Charlotte, 568 F.3d 148, 154 (4th Cir. 2009); Burbach Broadcasting Co. of Delaware v. Elkins Radio Corp., 278 F.3d 401, 405-06 (4th Cir. 2002); Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999).

A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 679. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)). In other words, if after taking the complaint's well-pleaded factual allegations as true, a lawful alternative explanation appears a "more likely" cause of the complained of behavior, the claim for relief is not plausible. Id.

**2. Claims against Chief Monroe**

Plaintiffs make a total of three allegations against Chief Monroe in the 121 paragraphs of the Complaint. None of the causes of action in the Complaint contain any factual allegations against him. Despite this lack of well- pleaded facts, the caption states that Plaintiffs are suing Chief Monroe in both his individual and official capacities. Plaintiffs seek punitive damages against Chief Monroe in his individual capacity because he acted "maliciously, recklessly and with deliberate indifference to the safety of the public" in authorizing the continued use of TASERs. Id. at ¶ 116.

The Complaint merely states:

Chief Monroe…had specific knowledge that cardiac capture, cardiac arrest and risk of death was [sic]associated with and foreseeable when the TASER weapon is deployed and makes contact with the victim's chest and probes release electric current in close proximity to the victim's heart.

Doc. 1 at ¶ 39. Plaintiffs assert that Chief Monroe was, "[a]t all relevant times…act[ing] under color of state law." Id. at ¶ 14.

Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165-66 (1985). The § 1983 claims brought against Chief Monroe in his official capacity are duplicative of the claims brought against the City and thus subject to dismissal. See Ridpath v. Bd. Of Governors Marshall Univ., 447 F.3d 292, 307 n.13 (4th Cir. 2006) (holding that official capacity § 1983 claims against university administrators were duplicative of claims against the university's Board of Governors and subject to dismissal); Love-Lane v. Martin, 355 F.3d 766, 783 (4th Cir. 2004) (holding that official capacity § 1983 claims against school superintendent were duplicative of the claims against the school board and subject to dismissal). Accordingly, the undersigned respectfully recommends that Plaintiffs' § 1983 claims against Chief Monroe in his official capacity be dismissed.

With regard to Plaintiffs' claims against Chief Monroe in his individual capacity, they have not alleged any individual actions on his part that directly caused decedent's death. Plaintiffs seek to hold Chief Monroe liable as the "ultimate supervisor" of Officer Forbes under a theory of respondeat superior. Doc. 1 at ¶ 6. It is well-established law that municipal liability under § 1983 cannot be predicated upon the doctrine of respondeat superior. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Neither can an individual supervisor within the municipal organization be held liable under § 1983 for a subordinate's allegedly unconstitutional conduct. See Carter v. Morris, 164 F.3d 215, 220-21 (4th Cir. 1999).

Rather, to state a § 1983 claim against a supervisor, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676. In Shaw v. Stroud, 13 F.3d 791 (4th Cir. 1994), the Fourth

Circuit found that supervisory liability may attach to an official in his individual capacity under § 1983 if a plaintiff can establish three elements:

> (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a "pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Id. at 799 (citations omitted).

The undersigned finds that the Complaint lacks well- pleaded factual allegations against Chief Monroe and falls short of the required showing for supervisory liability under Shaw. Plaintiffs allegations are entirely conclusory. See Iqbal, 556 U.S. at 678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Therefore, the undersigned respectfully recommends that Plaintiffs' §1983 claims against Chief Monroe in his individual capacity be dismissed.

Because the undersigned recommends that the § 1983 claims against Chief Monroe be dismissed, we do not reach the issue of whether he is entitled to qualified immunity.

### 3. Claims against The City of Charlotte

Plaintiffs assert § 1983 claims against the City for excessive force and failure to train. "A municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue. Respondeat superior or vicarious liability will not attach under § 1983." City of Canton v. Harris, 489 U.S. 378, 385 (1989)(citing Monell, 436 U.S. at 694-95; see also Carter v. Morris, 164 F.3d 215, 218 (4th Cir.1999). A plaintiff seeking to impose liability on a municipality for the constitutional torts of its employees under § 1983 must prove

that some municipal "policy" or "custom" caused a deprivation of the plaintiff's rights.  Monell, 436 U.S. at 694.

The Fourth Circuit has long recognized Monell and its progeny requiring the plaintiff to adequately plead and prove the existence of an official policy or custom that proximately caused a deprivation of rights.  Walker v. Prince George's Cnty., 575 F.3d 426, 431 (4th Cir. 2009). Furthermore, the identification of a specific municipal policy or custom is a threshold requirement.  See Semple v. City of Moundsville, 195 F.3d 708, 712 (4th Cir.1999).

"Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." Bd. Of Cmm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 403–404 (1997) (citing Monell, 436 U.S. at 694).  Furthermore, the plaintiff must "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Id. at 404.

"Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." Id. at 405; see also City of Canton, 489 U.S. at 391-92.

In Carter v. Morris, 164 F.3d 215 (4th Cir. 1999), the Fourth Circuit identified four possible sources of "official policy or custom" giving rise to municipal liability: (1) "written ordinances and regulations;" (2) "affirmative decisions of individual policymaking officials;" (3) omissions by policymaking officials "that manifest deliberate indifference to the rights of the

citizens;" or (4) a practice "so persistent and widespread and so permanent and well settled as to constitute a custom or usage with the force of law." Id. at 218. (quotations and citations omitted).

Although municipal policymakers may adopt an official policy directly authorizing police conduct that is itself unconstitutional, a plaintiff will usually have to establish municipal liability by demonstrating something other than direct authorization by policymakers. See Spell v. McDaniel, 824 F.2d 1380,1387–88 (4th Cir. 1987). Accordingly, the Fourth Circuit has recognized two basic theories for imposing liability on a municipality where "fault and causation cannot be laid to a municipal policy 'itself unconstitutional.'" Id. at 1389. First, a plaintiff can establish liability by demonstrating a deficient program of police training and supervision that results in a constitutional violation committed by untrained or improperly trained officers. Id. Second, a plaintiff can demonstrate an "irresponsible failure by municipal policymakers to put a stop to or correct a widespread pattern of unconstitutional conduct by police officers of which the specific violation is simply an example." Id. The requirements for establishing either of these theories of liability based on police misconduct are necessarily stringent in order to avoid inadvertently attaching a form of vicarious liability to the municipality. Id. at 1391; Carter, 164 F.3d at 218.

Here, Plaintiffs do not allege that the City policymakers adopted an official policy authorizing or condoning the allegedly unconstitutional actions by the individual Defendants that caused decedent's death. Instead, Plaintiffs allege that "TASERs are deadly weapons" and that the City has maintained a policy or custom of allowing and encouraging its police officers to use TASERs "in circumstances where deadly force was unjustified and less deadly uses of force should have been implemented." Doc. 1 at ¶52 and 55. Plaintiffs also allege that the City failed to train its police officers in "the proper way to contain, treat and secure irrational persons such

as Williams...the dangers of TASER ECD shocks...[and] the necessity of avoiding the targeting of TASER's towards a subject's chest and heart". Id. at ¶ 75. The Court will address both of these theories of recovery.

**a. Allegations that the City condoned a custom or usage of unconstitutional conduct by its police officers**

For liability to attach for an unconstitutional custom or usage, "(1) the municipality must have 'actual or constructive knowledge' of the custom and usage by its responsible policymakers, and (2) there must be a failure by those policymakers, 'as a matter of specific intent or deliberate indifference,' to correct or terminate the improper custom and usage." Randall v. Prince George's Cnty., 302 F.3d 188, 210 (4th Cir. 2002)(quoting Spell, 824 F.3d at 1391). A custom or usage cannot be established by proof of a single constitutional violation. Spell, 824 F.2d at 1391 ("proof of a single violation . . . obviously cannot support an inference that the violation resulted from a municipally condoned custom of comparable practices"). "Constructive knowledge may be inferred from the widespread extent of the practices, general knowledge of their existence, manifest opportunities and official duty of responsible policymakers to be informed, or combinations of these." Id. A close causal link must exist between the known but uncorrected custom and the specific constitutional violation. Id.

Plaintiffs' allegations that the City condoned the custom or usage of allowing its police officers to violate the constitutional rights of citizens by using TASERs fails to state a claim for relief under Iqbal. Plaintiffs argue that the City neither prohibited the use of TASERs nor the targeting of a suspect's chest with the device following the death of Darryl Turner. Plaintiffs claim that this established a policy of usage that constitutes deliberate indifference to the use of excessive force. The Complaint fails to set forth factual allegations from which the Court can infer constructive knowledge on the part of a responsible policymaker of any widespread

practice or custom of police officers to use excessive force involving TASERs in violation of the Fourth Amendment. The Turner incident and Williams' death here are not enough to establish a widespread practice or custom of excessive force by the use of TASERs.[1] As stated by District Judge Martin Reidinger in Gaddy v. Yelton:

> [T]he word "widespread" must be taken seriously. It is not enough to demonstrate that policymakers could, or even should, have been aware of the unlawful activity because it occurred more than once. The plaintiff must introduce evidence demonstrating that the unlawful practice was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision.

No. 1:10-cv-214, 2011 WL 3608023, at *5 (W.D.N.C. August 16, 2011)(quoting Phelan v. Cook Cnty., 463 F.3d 773, 790 (7th Cir. 2006). Plaintiff's Complaint is devoid of any factual allegations from which the Court could reasonably infer the existence of a longstanding custom of excessive force by the use of TASERs. See Fordham v. Doe, No. 4:11-cv-32-D, 2011 WL 5024352, at *6 (E.D.N.C. October 20, 2011)(holding that police officers' use of TASERS on 31 documented occasions and the city's sustaining 21 complaints of excessive TASER use by officers failed to amount to a practice "so persistent and widespread and so permanent and well settled as to constitute a custom or usage with the force of law.") Therefore, the Complaint does not state a § 1983 claim for municipal liability based upon the theory that the City condoned a custom of unconstitutional conduct by its officers.

### b. Allegations that the City is liable under a theory of deficient training

The Supreme Court has held that "[i]n limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." Connick v. Thompson, — U.S. — ,131 S.Ct. 1350, 1359 (2011). However, "[a] municipality's culpability

---

[1] In their Response, Plaintiffs point to a press release, settlement release and newspaper article in support of this claim. Since none of these documents are attached to the pleadings, they cannot be considered by the Court.

for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Id. Accordingly, in order for a deficiency in training to be properly considered as an actionable policy or custom giving rise to liability under § 1983, the municipality's decision not to train must amount to "'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" Id. at 1359–60 (quoting City of Canton, 489 U.S. at 388–89 (1989)) (alterations in original). This is "'a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'" Id. at 1360 (quoting Bryan Cnty., 520 U.S. at 410). A less stringent standard would result in de facto respondeat superior liability. Id. Moreover, § 1983 "does not provide plaintiffs or courts carte blanche to micromanage local governments throughout the United States .... [S]howing merely that additional training would have been helpful in making difficult decisions does not establish municipal liability." Id. at 1363.

To show deliberate indifference in a failure to train case, a plaintiff must show that city policymakers were on actual or constructive notice that a particular omission in their training program caused employees to violate citizens' rights but chose to retain that program. See Id. at 1360. Such a "'policy of inaction' in light of notice that its program will cause constitutional violations 'is the functional equivalent of a decision by the city itself to violate the Constitution.'" Id. (quoting City of Canton, 489 U.S. at 395). Ordinarily, a pattern of similar constitutional violations by untrained employees is necessary to show deliberate indifference in a failure to train case. Id. Such a pattern can establish policymakers' "'continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees'" and show conscious disregard for the consequences of their actions, thus demonstrating the

deliberate indifference necessary to trigger municipal liability. Id. (quoting Bryan Cnty., 520 U.S. at 407).

Here, Plaintiffs allege in conclusory fashion that the City failed to train its police officers in "the proper way to contain, treat and secure irrational persons such as Williams...the dangers of TASER ECD shocks...[and] the necessity of avoiding the targeting of TASER's towards a subject's chest and heart". Id. at ¶ 75. As stated above, this incident and the one involving Darryl Turner are not sufficient to prove a pattern of similar constitutional violations by untrained employees. Additionally, Plaintiffs have pled no facts establishing that any alleged failure to train resulted from city policymakers' deliberate indifference to citizens' constitutional rights. See, e.g., Bryan Cnty., 520 U.S. at 407-09; City of Canton, 489 U.S. at 391; Doe v. Broderick, 225 F.3d 440, 456 (4th Cir. 2000); Semple, 195 F.3d at 713-14; Spell, 824 F.2d at 1390. Plaintiffs cannot simply rely on an inference of wrongdoing and their complaint about the training of CMPD officers to fasten liability on the City. See City of Canton, 489 U.S. at 390 (1989). Plaintiffs must offer more than an "unadorned, the defendant-unlawfully-harmed-me accusation" to survive a motion to dismiss. Iqbal, 556 U.S. 662, 678. The undersigned finds that the Complaint does not state a § 1983 claim for municipal liability against the City based upon any failure to train its police officers on the proper use of TASERs.

For these reasons, the undersigned respectfully recommends that Plaintiffs' § 1983 claims against the City be dismissed.

## B. Motion to Dismiss for Lack of Subject Matter Jurisdiction

### 1. Standard of Review

Pursuant to Rule 12(b)(1), a claim may be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The existence of subject matter jurisdiction is a threshold

issue the court must address before considering the merits of a case. Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999). The plaintiff has the burden of proving that subject matter jurisdiction exists. Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Id. The district court should grant the Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id.

Article III of the United States Constitution "confines the federal courts to adjudicating actual 'cases' and 'controversies.'" Allen v. Wright, 468 U.S. 737, 750 (1984). "Doctrines like standing [and] ... ripeness are simply subsets of Article III's command that the courts resolve disputes, rather than emit random advice." Bryant v. Cheney, 924 F.2d 525, 529 (4th Cir.1991).

Standing concerns "whether the plaintiff is the proper party to bring th[e] suit...." Raines v. Byrd, 521 U.S. 811, 818 (1997). The "central purpose of the standing requirement [is] to ensure that the parties before the court have a concrete interest in the outcome of the proceedings such that they can be expected to frame the issues properly." ProEnglish v. Bush, 70 F. App'x 84, 87 (4th Cir. 2003)(quoting Harris v. Evans, 20 F.3d 1118, 1121 (11th Cir.1994)). To satisfy the standing requirement and confer subject matter jurisdiction, the party invoking federal jurisdiction must show that (1) he has suffered an injury in fact, (2) the injury is fairly traceable to the defendants' actions, and (3) it is likely, and not merely speculative, that the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992);

see also Friends of the Earth, Inc. v. Gaston Copper Recycling Corp., 204 F.3d 149, 154 (4th Cir.2000) (en banc).

"When a defendant raises standing as the basis for a motion under Rule 12(b)(1) to dismiss for lack of subject matter jurisdiction, ... the district court may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." White Tail Park, Inc. v. Stroube, 413 F.3d 451, 459 (4th Cir.2005) (internal quotation marks omitted). Nevertheless, "[f]or purposes of ruling on a motion to dismiss for want of standing, the trial ... court[ ] must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." Warth v. Seldin, 422 U.S. 490, 501 (1975).

## 2. Claim for Injunctive Relief Against the City of Charlotte

Plaintiffs seek "to permanently enjoin the Charlotte-Mecklenburg Police Department from its continued usage of TASER's by its officers…" or, in the alternative, to "temporarily enjoin officers…from using TASER's without a material alteration in the procedures, policies and customs of the Defendant Charlotte-Mecklenburg Police Department…" Doc. 1 at ¶ 66.

Defendants argue that the injunctive relief sought by Plaintiffs here was rejected by the Supreme Court in City of Los Angeles v. Lyons, 461 U.S. 95 (1983). In Lyons, a young man was held in a chokehold by an officer until he passed out during a traffic stop where he was indisputably compliant with the officer's commands. 461 U.S. 95, 97-98. He presented evidence of a series of unconstitutional applications of a chokehold by the Los Angeles Police Department ("LAPD"). Id. at 98. Lyons sought damages under § 1983 as well as an injunction against the use of chokeholds by LAPD.

The Supreme Court concluded that, while he had standing to seek damages under § 1983, he lacked standing for injunctive relief:

> In order to establish an actual controversy in this case, Lyons would have had not only to allege that he would have another encounter with the police but also to make the incredible assertion either, (1) that *all* police officers in Los Angeles *always* choke any citizen with whom they happen to have an encounter, whether for the purpose of arrest, issuing a citation or for questioning or, (2) that the City ordered or authorized police officers to act in such a manner.

461 U.S. 95, 105-106 (emphasis in original).

Based upon the holding in Lyons, the undersigned finds that Plaintiffs lack standing to seek injunctive relief against the City of Charlotte. They have not alleged that they are likely to have a similar encounter with a police officer nor have they alleged that *all* CMPD officers deploy TASERs in *every* encounter with citizens. Furthermore, Plaintiffs have not responded to Defendants' Motion to Dismiss their claim for injunctive relief. Accordingly, the undersigned respectfully recommends that Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction be granted as to Plaintiffs' claim for injunctive relief.

## IV. RECOMMENDATION

FOR THE FOREGOING REASONS, the undersigned respectfully recommends that "Defendants Rodney Monroe and The City of Charlotte's Motion for Judgment on the Pleadings and Motion to Dismiss for Lack of Jurisdiction," Doc. 22, be GRANTED.

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also

preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Max O. Cogburn, Jr.

**SO RECOMMENDED**.

Signed: August 2, 2013

David S. Cayer
United States Magistrate Judge